AF Approval *MML*                    Chief Approval *A cθ*

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    Criminal No. 6:20-cr-78-Orl-40DCI

MAX BENNETT CHAMBERS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Maria Chapa Lopez, United States Attorney for the Middle District of Florida, and the defendant, MAX BENNETT CHAMBERS, and the attorneys for the defendant, Mark Rankin, Esq. and Brett McIntosh, Esq., mutually agree as follows:

### A.   **Particularized Terms**

1.   Counts Pleading To

The defendant shall enter a plea of guilty to Count Two of the Indictment, Doc. 1. Count Two chargse the defendant with possession of machine gun, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2).

2.   Minimum and Maximum Penalties

Count Two each carries a maximum sentence of 10 years' imprisonment, a maximum fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100.

Defendant's Initials *MC*

3.   <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

<u>First:</u>     The defendant possessed a "machine gun"; and

<u>Second</u>    The defendant knew it was a machine gun or was aware of the firearm's essential characteristics that made it a "machine gun" as defined in 26 U.S.C. § 5845(b).

4.   <u>Count(s) Dismissed</u>

At the time of sentencing, the remaining counts against the defendant, Count One of the Indictment will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.   <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this agreement.

6.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _MC_                    3

7.    Two Level Downward Variance

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will also recommend a two level downward variance from the applicable guidelines range as determined by the Court. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following: One non-metallic in color auto-sear, one metallic in color auto-sear, and one 5.56 NATO caliber, AR-15 style rifle.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative

Defendant's Initials _____   4

forfeiture action.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further

Defendant's Initials _MuC_                          5

agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea

Defendant's Initials _MC_                6

Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Defendant's Initials _MC_            7

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

## B.    Standard Terms and Conditions

### 1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing

Defendant's Initials _MC_      8

other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)),

including, but not limited to, garnishment and execution, pursuant to the

Mandatory Victims Restitution Act, in order to ensure that the defendant's

restitution obligation is satisfied.  On each count to which a plea of guilty is

entered, the Court shall impose a special assessment pursuant to 18 U.S.C. §

3013.  The special assessment is due on the date of sentencing.

    2.   <u>Supervised Release</u>

        The defendant understands that the offense(s) to which the

defendant is pleading provide(s) for imposition of a term of supervised release

upon release from imprisonment, and that, if the defendant should violate the

conditions of release, the defendant would be subject to a further term of

imprisonment.

    3.   <u>Immigration Consequences of Pleading Guilty</u>

        The defendant has been advised and understands that, upon

conviction, a defendant who is not a United States citizen may be removed

from the United States, denied citizenship, and denied admission to the

United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United

States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States

Defendant's Initials _MC_                11

Probation Office.  Defendant further understands and acknowledges that any

discussions between defendant or defendant's attorney and the attorney or

other agents for the government regarding any recommendations by the

government are not binding on the Court and that, should any

recommendations be rejected, defendant will not be permitted to withdraw

defendant's plea pursuant to this plea agreement.  The government expressly

reserves the right to support and defend any decision that the Court may make

with regard to the defendant's sentence, whether or not such decision is

consistent with the government's recommendations contained herein.

    7.   Defendant's Waiver of Right to Appeal the Sentence

        The defendant agrees that this Court has jurisdiction and

authority to impose any sentence up to the statutory maximum and expressly

waives the right to appeal defendant's sentence on any ground, including the

ground that the Court erred in determining the applicable guidelines range

pursuant to the United States Sentencing Guidelines, except (a) the ground

that the sentence exceeds the defendant's applicable guidelines range as

determined by the Court pursuant to the United States Sentencing Guidelines;

(b) the ground that the sentence exceeds the statutory maximum penalty; or (c)

the ground that the sentence violates the Eighth Amendment to the

Constitution; provided, however, that if the government exercises its right to

Defendant's Initials _MC_        12

appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from her waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges

Defendant's Initials <u>MC</u>                    13

defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _MC_                    14

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _MC_          15

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __11__ day of __August__, 2020.

MARIA CHAPA LOPEZ
United States Attorney

_Max Chambers_

Max Bennett Chambers
Defendant

_Mark Rankin_ For Mark Rankin

Mark Rankin, Esq.
Attorney for Defendant

_Brett McIntosh_

Brett McIntosh, Esq.
Attorney for the Defendant

_Amanda Daniels_

Amanda Daniels
Assistant United States Attorney

_Sara C. S_

Sara C. Sweeney
Assistant United States Attorney
Deputy Chief, Orlando Division

Defendant's Initials _MC_                    16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          Criminal No. 6:20-cr-78-Orl-40DCI

MAX BENNETT CHAMBERS

FACTUAL BASIS

On January 28, 2019, in the Middle District of Florida, the defendant,

Max Bennett Chambers (Chambers), did knowingly possess a machinegun, as

defined by 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b), as follows: A

metallic in color auto-sear device, consisting of metal mounting body with a

sear, pivot-pin and return spring, commonly referred to as a "drop in auto-

sear" or a "DIAS" and A black 5.56 NATO caliber, AR-15 style rife with an

overall length of 34.5 inches and a rifled barrel of approximately 16.25 inches,

capable of firing fully automatic.

University of Central Florida (UCF) police received an anonymous

crime line tip claiming that Chambers was in possession of drop in auto-sears

(DIAS) on university grounds. After making contact with Chambers in his

dorm room, officers discovered one completed DIAS. Officers found a second

completed DIAS in Chambers's vehicle, parked on UCF property. Also in

Defendant's Initials _MC_                   17

Chambers's vehicle, officers found an AR-15 style rifle that Chambers

converted to fire automatically. Chambers admitted to making the DIASs and

to knowing that they were used to make a gun fire automatically, and to

altering the AR-15 to make it fire automatically. Chambers also admitted to

knowing the essential characteristics of the firearm that make it a "machine

gun."

<u>Investigation</u>

On January 28, 2019, UCF Officer Panter (Ofc. Panter) began

investigating an anonymous Crimeline tip claiming that Chambers, an

enrolled UCF student, possessed multiple DIASs, which were stored in his

vehicle. Ofc. Panter contacted Alcohol, Tobacco, Firearms and Explosives

(ATF) Special Agent Bryan Page (SA Page) to aid in this investigation.

After receiving this tip, Ofc. Panter discovered that in February 2018,

UCF Police received a complaint alleging that Chambers had a firearm in his

dorm room. Upon investigating this complaint, UCF police discovered an

upper receiver for a rifle in Chambers's dorm room and issued Chambers a

UCF housing violation.

Ofc. Panter and SA Page went to Chambers's dorm room and made

contact with his roommate, J.F. J.F. consented to Ofc. Panter, SA Page, and

other UCF officers entering the common spaces of dorm room. J.F. told Ofc.

Defendant's Initials _MC_                    18

Panter and SA Page that he believed Chambers's firearms were in Chambers's car. J.F. further stated that he saw a DIAS in Chambers's bedroom during the prior week and accurately described the appearance of the DIAS officers later recovered. J.F. believed Chambers manufactured DIASs over winter break. J.F. stated that Chambers told him that DIASs typically cost $15,000 to $20,000 to buy, so it was easier to make one. Finally, J.F. told Ofc. Panter and SA Page that Chambers said he could make a lot of money if he sold the DIAS, but described Chambers's comment as hypothetical.

With this information, Ofc. Panter and SA Page knocked on Chambers's bedroom door, asked Chambers to step out of his room, and had a consensual conversation with him. During this conversation, Chambers denied having a firearm in his bedroom, but admitted to having ammunition. Chambers also admitted to manufacturing DIASs over Winter break, to knowing that a DIAS is considered a machine gun, and to knowing that DIASs are illegal to possess. Chambers consented to Ofc. Panter and SA Page entering his bedroom to retrieve the DIASs.

Once in his bedroom, Chambers directed Ofc. Panter and SA Page to his desk, where they retrieved the DIAS from a drawer. This DIAS was missing a pin and toggle, and so, was not complete. After additional conversation, Chambers directed officers to a second, completed DIAS, made

Defendant's Initials _MC_                    19

out of acrylic. Chambers told Ofc. Panter and SA Page that there was an additional DIAS in his car.

Chambers stated that he manufactured the DIASs at a machine lab, but said he did so after the lab's regular business hours and that no one at the lab helped him or knew about what he was making. Chambers explained that he made the DIAS because, he wanted to try it out, without paying $20,000. Chambers admitted to making four DIASs total, two complete (one out of acrylic and one out of metal), one without a pin and toggle, and one that was less than 80% complete. Chambers initially denied selling or giving away any DIAS.

Chambers explained that he utilized his laptop computer and cell phone to research how to make DIASs. Ofc. Panter and SA Page located schematics for manufacturing DIASs in Chambers' room. A forensics search of Chambers's phone, also pursuant to his consent, showed internet searches for how to build DIAS.

Chambers also admitted that there was a metal DIAS in his vehicle and gave consent for officers to search his vehicle. Once located, Ofc. Panter and SA Page noticed that the DIAS found in Chambers's vehicle had signs of wear on it. When asked, Chambers explained that he had installed this DIAS in his AR-15 style rifle, but claimed it did not function properly due to a "full auto

Defendant's Initials _M C_                    20

kit" that Chambers installed on the AR-15. Officers also located an AR-15 style rife in Chambers's car. Once located, SA Page did a basic function test on the AR-15 and determined it was capable of firing automatically.

In March 2020, the ATF examined both completed DIASs and the AR-15. The ATF Firearms Technology Criminal Branch Report of Technical Examination determined that both DIASs were, in fact, machine guns, as defined by 26 U.S.C. § 5845(b). The ATF also confirmed that the AR-15 that Chambers modified shoots automatically and therefore is a machine gun, as defined by 26 U.S.C. § 5845(b).

<u>Interview on January 29, 2018</u>

On Tuesday, January 29, 2018, Ofc. Panter and SA Page interviewed Chambers at the UCF police department. This interview is both audio and video recorded. After waiving his Miranda rights, Chambers made numerous incriminating statements.

During this interview, Chambers again admitted to possessing and manufacturing two complete DIAS, a third mostly complete DIAS, and a fourth DIAS that he did not intend to/could not complete because the dimensions were incorrect. Chambers again explained that he manufactured the DIASs in a machine lab and even identified the type of machine he used to mill the DIAS.

Defendant's Initials _M C_                    21

Chambers also admitted to purchasing and installing the full-automatic converter kit onto his AR-15 style rifle during this interview. Further, Chambers demonstrated an understanding of how DIASs functioned in firearms. Chambers discussed the cost of making a DIAS in contrast to purchasing them. Chambers also engaged Ofc. Panter and SA Page in a discussion about how he does not like to be confined by laws. Chambers also acknowledged that the AR-15 fired automatically after he modified it.

Although he initially denied attempting to sell a DIAS to anyone, during this interview Chambers admitted to discussing the possibility of selling a DIAS to a friend at school with that friend. That friend was interviewed by officers, and corroborated this discussion in both a written and recorded verbal statement.

Defendant's Initials _MC_      22