UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

   v.                                                   Criminal No. 6:20-cr-78-Orl-40DCI

MAX BENNETT CHAMBERS

### UNITED STATES' MEMORANDUM ON SENTENCING

The United States respectfully submits the following memorandum for the Court's consideration in sentencing Max Bennett Chambers ("defendant").

The United States has agreed to recommend that the Court vary the base offense level two levels downward. In tandem with the recommended variance, the United States recommends a sentence at the low end of these guidelines. A sentence at the low end of guideline range is sufficient but not greater than necessary to comply with the purposes set out in 18 U.S.C. § 3553.

    **I.**    **Background**

On January 28, 2019, in the Middle District of Florida, the defendant did knowingly possess a machinegun, as defined by 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b), as follows: A metallic in color auto-sear device, consisting of metal mounting body with a sear, pivot-pin and return spring, commonly referred to as a "drop in auto-sear" or a "DIAS" and A black 5.56

NATO caliber, AR-15 style rife with an overall length of 34.5 inches and a rifled barrel of approximately 16.25 inches, capable of firing fully automatic.

University of Central Florida (UCF) police received an anonymous crime line tip claiming that the defendant was in possession of drop in auto-sears (DIAS) on university grounds. After making contact with the defendant in his dorm room, officers discovered one completed DIAS. Officers found a second completed DIAS in the defendant's vehicle, parked on UCF property. Also in the defendant's vehicle, officers found an AR-15 style rifle that the defendant converted to fire automatically. The defendant admitted to making the DIASs and to knowing that they were used to make a gun fire automatically, and to altering the AR-15 to make it fire automatically. The defendant also admitted to knowing the essential characteristics of the firearm that make it a "machine gun."

<u>Investigation</u>

On January 28, 2019, UCF Officer Panter (Ofc. Panter) began investigating an anonymous Crimeline tip claiming that the defendant, an enrolled UCF student, possessed multiple DIASs, which were stored in his vehicle. Ofc. Panter contacted Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent Bryan Page (SA Page) to aid in this investigation. After receiving this tip, Ofc. Panter discovered that in February 2018, UCF

Police received a complaint alleging that the defendant had a firearm in his dorm room. Upon investigating this complaint, UCF police discovered an upper receiver for a rifle in the defendant's dorm room and issued the defendant a UCF housing violation.

 Ofc. Panter and SA Page went to the defendant's dorm room and made contact with his roommate, J.F. J.F. consented to Ofc. Panter, SA Page, and other UCF officers entering the common spaces of dorm room. J.F. told Ofc. Panter and SA Page that he believed the defendant's firearms were in the defendant's car. J.F. further stated that he saw a DIAS in the defendant's bedroom during the prior week and accurately described the appearance of the DIAS that officers later recovered. J.F. believed that the defendant manufactured DIASs over winter break. J.F. stated that the defendant told him that DIASs typically cost $15,000 to $20,000 to buy, so it was easier to make one. Finally, J.F. told the officers that the defendant said he could make a lot of money if he sold the DIAS, but described the defendant's comment as hypothetical.

 With this information, Ofc. Panter and SA Page knocked on the defendant's bedroom door, asked him to step out of his room, and had a consensual conversation. During this conversation, the defendant denied having a firearm in his bedroom, but admitted to having ammunition. The

defendant also admitted to manufacturing DIASs over Winter break, to knowing that a DIAS is considered a machine gun, and to knowing that DIASs are illegal to possess. The defendant consented to Ofc. Panter and SA Page entering his bedroom to retrieve the DIASs.

Once in his bedroom, the defendant directed Ofc. Panter and SA Page to his desk, where they retrieved the DIAS from a drawer. This DIAS was missing a pin and toggle, and so, was not complete. After additional conversation, the defendant directed officers to a second, completed DIAS, made out of acrylic. The defendant told Ofc. Panter and SA Page that there was an additional DIAS in his car.

The defendant stated that he manufactured the DIASs at a machine lab, but said he did so after the lab's regular business hours and that no one at the lab helped him or knew about what he was making. The defendant explained that he made the DIAS because, he wanted to try it out, without paying $20,000. The defendant admitted to making four DIASs total, two complete (one out of acrylic and one out of metal), one without a pin and toggle, and one that was less than 80% complete. The defendant denied selling or giving away any DIAS.

The defendant explained that he utilized his laptop computer and cell phone to research how to make DIASs. Ofc. Panter and SA Page located

schematics for manufacturing DIASs in Chambers' room. A forensics search of the defendant's phone, also pursuant to his consent, showed internet searches for how to build a DIAS.

The defendant also admitted that there was a metal DIAS in his vehicle and gave consent for officers to search his vehicle. Once located, Ofc. Panter and SA Page noticed that the DIAS found in the defendant's vehicle had signs of wear on it. When asked, the defendant explained that he had installed this DIAS in his AR-15 style rifle, but claimed it did not function properly due to a "full auto kit" that he installed on the AR-15. Officers also located an AR-15 style rife in the defendant's car. Once located, SA Page did a basic function test on the AR-15 and determined it was capable of firing automatically.

In March 2020, the ATF examined both completed DIASs and the AR-15. The ATF Firearms Technology Criminal Branch Report of Technical Examination determined that both DIASs were, in fact, machine guns, as defined by 26 U.S.C. § 5845(b). The ATF also confirmed that the AR-15 that Chambers modified shoots automatically and therefore is a machine gun, as defined by 26 U.S.C. § 5845(b).

<u>Interview on January 29, 2018</u>

On Tuesday, January 29, 2018, Ofc. Panter and SA Page interviewed the defendant at the UCF police department. After waiving his Miranda

rights, the defendant made numerous incriminating statements.

During this interview, the defendant again admitted to possessing and manufacturing two complete DIASs, a third mostly complete DIAS, and a fourth DIAS that he did not intend to/could not complete because the dimensions were incorrect. The defendant again explained that he manufactured the DIASs in a machine lab and even identified the type of machine he used to mill the DIASs.

The defendant also admitted to purchasing and installing the full-automatic converter kit onto his AR-15 style rifle during this interview. Further, the defendant demonstrated an understanding of how DIASs function in firearms. The defendant discussed the cost of making a DIAS in contrast to purchasing them. The defendant also engaged Ofc. Panter and SA Page in a discussion about how he does not like to be confined by laws. The defendant also acknowledged that the AR-15 fired automatically after he modified it.

Although he initially denied attempting to sell a DIAS to anyone, during this interview Chambers admitted to discussing the possibility of selling a DIAS to a friend at school. That friend was interviewed by officers, and corroborated this discussion in both a written and recorded verbal statement.

## II. Argument

Under 18 U.S.C. § 3553(a)(1) the Court shall impose a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). The section 3553(a) factors include, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) Any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A sentence at the low end of the guidelines is sufficient but not greater than necessary accomplish the purposes set forth in the above listed factors. Although, the defendant is young, the severity of his crime, particularly with

reference to where he stored these machine guns, and the defendant's attitude about the law merits a sentence of imprisonment at the low end of the guidelines.

The nature and circumstances of this offense justify a sentence of imprisonment at the low end of the guidelines. Here, the defendant made his own machine guns, stored them on a university campus, and engaged in discussions about the possibility of selling a DIAS. Any one of these facts would be alarming on its own; however, in combination it is clear that the circumstances of this case are quite alarming and serious. They were so serious, in fact, that law enforcement was alerted to this case by an anonymous tip, demonstrating how concerning the defendant's possession of these items was to those around him.

A sentence at the low end of the guidelines is needed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. Although the defendant is young, his obsession with guns and disregard for the law necessitate a sentence of imprisonment. During his interview with law enforcement, the defendant specifically discussed his research on how to legally acquire a fully automatic gun. During this conversation, the defendant demonstrates his understanding that the prohibition against owning machine guns does not apply to machine guns

registered before a certain date, and that otherwise, the possession of machine guns is illegal. The defendant also admits that he knows that what he made qualifies as a machine gun. Finally, during his interview the defendant states that he does not like being restricted by laws. It is clear from the defendant's interview that he was aware that possession of these machine guns was illegal and persisted in making and possessing multiple machine guns anyway, demonstrating his clear disregard for the law. A sentence of imprisonment at the low end of the guidelines properly reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.

      A sentence at the low end of the guidelines also affords adequate deterrence to criminal conduct and protects the public from further crimes of the defendant. The defendant's disregard for the law in relation to this offense and, in particular, his statement that he does not like being confined by laws suggests that a term of imprisonment at the low end of the guidelines is warranted here. Although the defendant has no criminal history, this is not his first sanction for improper possession of firearms at UCF. As stated above, approximately a year prior to this offense the defendant received a UCF housing violation when UCF police discovered an upper receiver for a rifle in the defendant's dorm room. A sentence at the low end of the guidelines will

afford adequate deterrence and protect the public from further crimes of the defendant.

### III. Conclusion

For the foregoing reasons, the United States recommends that the Court impose a sentence at the low end of the guideline range.

                                  Respectfully submitted,

                                  MARIA CHAPA LOPEZ
                                  United States Attorney

By: *s/ Amanda Daniels*
     Amanda Daniels
     Assistant United States Attorney
     Bar No. 111444
     400 W. Washington Street, Suite 3100
     Orlando, Florida 32801
     Telephone: (407) 648-7500
     Facsimile: (407) 648-7643
     E-mail: amanda.daniels@usdoj.gov

U.S. v. MAX CAHMBERS  Case No. 6:20-cr-78-Orl-40DCI

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

>Mark Rankin, Esq.,
>Brett D. McIntosh, Esq.

>*/s/ Amanda Daniels*
>Amanda Daniels
>Assistant United States Attorney
>Bar No. 111444
>400 W. Washington Street, Suite 3100
>Orlando, Florida 32801
>Telephone: (407) 648-7500
>Facsimile: (407) 648-7643
>E-mail: amanda.daniels@usdoj.gov