UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

vs.                                                CASE NO. 6:20-cr-78-ORL-40DCI

MAX BENNETT CHAMBERS

        Defendant.
_____/

**DEFENDANT MAX CHAMBERS'S MOTION FOR DOWNWARD VARIANCE AND INCORPORATED MEMORANDUM OF LAW**

Comes now the Defendant, Max Chambers, and files this Motion for Downward Variance and Incorporated Memorandum of Law, and requests a sentence of probation, and states as follows:

**Sentencing Guidelines and the Parties' Recommendations**

The Pre-Sentence Report sets forth Total Office Level of 17 and a Criminal History Score of I, which corresponds to a guidelines range of 24-30 months in prison.

The government agreed in the plea agreement that it would recommend that the Court vary downward two levels under the Guidelines to reach a sentence of 18-24 months in prison and that it would recommend that the Court impose the low end of that range.

As detailed in this sentencing memorandum, Mr. Chambers requests that the Court impose a sentence of probation.

1

**Application of the § 3553(a) Sentencing Factors**

The Court is fully aware of the applicable sentencing factors and its sentencing discretion, so counsel will not waste the Court's time setting forth the factors or the law in that area. Instead, undersigned counsel will discuss the factors most important and applicable to Mr. Chambers's case and which warrant a sentence of probation.

1. The Nature and Circumstances of the Offense

Mr. Chambers committed a non-violent regulatory firearm offense. He possessed one weapon that was legal until altered to be capable of firing more than one round with a pull of the trigger. And he possessed two drop-in auto sears, which are otherwise benign metal pieces that are defined by statute as "machine guns" because capable of converting a semi-automatic rifle into an automatic one.  Possession of these items was only illegal because Congress said it was illegal - not because it is inherently wrong or injures others. It is an offense that is *malum prohibitum*, not *malum in se*. In sum, Mr. Chambers did not commit a crime of violence or any offense which risked harm to others. There is no allegation that he intended to do anything harmful to anyone at any time.

2. The History and Characteristics of Mr. Chambers

Mr. Chambers is a smart, curious, and talented young man. He graduated from Suncoast Polytechnical High School in 2017 with a GPA of 4.2575. While attending school, he also completed the EMT/firefighter training programs, though he was too young to be certified. At the time of his arrest, he was a sophomore student at the University of Central Florida where he was studying to be a mechanical engineer and had a GPA of 2.826. He is currently enrolled at Suncoast Technical College to continue his studies and earn a bachelor's degree.

Mr. Chambers is coming before this Court due to a convergence of interests in mechanical engineering, military service, and firearms. He made a bad decision to manufacture and use the drop-in auto sears, but that decision was in no way based upon a desire or plan to harm anyone or anything. Rather, it was born from natural curiosity, a desire to make things, and his interest in the military. Aside from violating the law, it was harmless.

As a young man, Mr. Chambers developed an interest in and talent for mechanical engineering and creating things. In the eleventh grade Mr. Chambers found a Makerspace located near his school. Makerspace is a space where high school students can go to learn about modern technology, inventions, and tools. Makerspace is self-described as a constructionist movement that is a form of teaching to assist young minds who are accustomed to consume technology. Makerspace is a teaching mechanism to assist students to implement technology in there learning process along with technical training in tools to allow them to invent, build, and construct new items and ideas to one day bring to market.

Mr. Chambers started to attend the Marketspace every day after school and on weekends. Max attended the Faulhaber Fab Lab, where he learned to use tools, 3D printers, laser cutters, lathes, electronics, and many other tools that he had no prior experience with. Mr. Chambers enjoyed building items and using the tools at the lab to make everyday items easier to use and more modern. Mr. Chambers began teaching classes in 3D printing and CAD modeling to new students that were discovering technology as he once had. Max volunteered over 600 hours at the lab and he fell in love with the engineering field. Mr. Chambers's exposure to the technology at the lab when he was in high school that led him to pursue a degree in Mechanical Engineering upon graduation from high school in 2017. Mr. Chambers was asked to perform many small

3

commission jobs for people when he was attending the Faulhaber Fab Lab, such as build furniture, make 3D printed parts, and build electronics and lights.

After high school Mr. Chambers was accepted to and began to attend the University of Central Florida in the fall of 2017. Mr. Chambers scored exceptionally well on his SAT and was accepted into the Honors College at the university. Mr. Chambers was also interested in the military, so he joined the Army ROTC program at the university. He participated in physical training every day at 5:30 a.m., field training exercises at the Army National Guard base near the university, as well as many other exercises offered by the ROTC program. Mr. Chambers was in the process of joining the Army as an officer and was excited about an opportunity to serve his country. In a letter to the Court,[1] his military science instructor, David Bobier, describes Mr. Chambers as "extremely dedicated to the UCF Army ROTC program and was very committed to meeting the requirements to become a Second Lieutenant in the United States Army." He goes on to write that "[i]t was easy to discern that Max had a love for the Military and his country."

While participating in ROTC, Mr. Chambers of course became interested in firearms. He purchased legal firearms, learned firearm safety, and learned to shoot. Aside from once breaking campus rules by having a firearm on school grounds, Mr. Chambers never violated any state or federal gun laws.[2] Due to his interest in mechanical engineering, Mr. Chambers was also very curious about how firearms worked. He did extensive research on firearm manufacturing and stumbled upon articles related to drop-in auto sears, which are a simple metal piece that turns a

---

[1] All letters to the Court referenced in this motion are attached hereto as Ex. A.
[2] The government makes hay out of the fact that when interviewed with law enforcement Mr. Chambers made a statement that he did not like being governed by laws. That statement should not affect the Court's analysis for two reasons. First, Mr. Chambers was merely trying to say that he knew he was breaking the law but thought that the law was really meant for people who intended to cause harm to others with an automatic weapon. As wrong as that is, it is not surprising logic for a teenager and it is not how Mr. Chambers feels today. Second, that statement in no way reflected – at that time or now – that Mr. Chambers somehow generally disrespects the law. Other than this incident, he has never been arrested.

semi-automatic rifle into an automatic weapon. Unfortunately, Mr. Chambers then decided to see if he could make them and whether they would work in his own firearm.

Until this incident, Mr. Chambers had never been arrested, much less convicted of any serious criminal offense. He is by nature non-violent and there is no allegation that he intended to commit any act of violence in this case. He was a talented, curious, smart young man who made a very bad (and permanent, costly) decision.

Mr. Chambers is by all accounts a fine young man with much to offer the world. His brother, Zelen Chambers, writes to the Court that Mr. Chambers was dedicated and proud to be a member of ROTC and extremely conscientious about gun safety. He describes how Mr. Chambers was likely motivated to made drop-in auto sears because he would want to prove that he could do it – not to cause harm to anyone. Since Mr. Chambers's father was not in his life until later and was not close to him as a teen, he developed a close bond with his mother's long-time boyfriend, Michael Kolligian. In his letter to the Court, Mr. Kolligian provides invaluable insight about Mr. Chambers's good character. Mr. Kolligian describes him as caring, thoughtful, and polite. He describes Mr. Chambers as "humbly brilliant" and patient with others. Mr. Chambers's father, Robert Chambers, has now grown closer to Mr. Chambers. In his letter to the Court he describes how his son voluntarily helps elderly nursing home residents with yard work and technical assistance. And how his son takes him to doctor appointment several times a week.

Overall, Mr. Chambers is clearly a sweet, non-violent young man who made a terrible and damaging mistake. He does not belong in prison and deserves a second chance at making a good life for himself despite being a convicted felon.

3. <u>The Need for Punishment, Deterrence, and Rehabilitation</u>

Should the Court see fit save Mr. Chambers from prison, Mr. Chambers will be a convicted felon and be on probation for the next several years. A year or so in prison will of course be punishment – but it is not necessary to resolve his case in a way that sufficiently punishes him. Mr. Chambers was a full-time UCF student. He was expelled from school because of this case. Mr. Chambers was an enthusiastic member of ROTC. He lost that because of this case. Mr. Chambers dreamed of a military career. That dream died when he was arrested and charged in this case. Mr. Chambers has suffered crippling collateral consequences due to this case – despite never hurting another person, stealing from anyone, or selling narcotics. His was a high price to pay for a non-violent *malum in se* type offense. Sending him to prison will be *additional* punishment that is unnecessary to address the seriousness of the offense.

Moreover, prison will do nothing to better Mr. Chambers. He is not a drug abuser, so prison drug treatment is not necessary. He is not in need of education or learning a trade. While some defendants would benefit from prison, it will be solely punishment for Mr. Chambers.

A year or so in prison will impose some punishment, but also do considerable harm to Mr. Chambers. Federal prison is no place for a docile young man with little streets smarts and no criminal history. It is far more likely that Mr. Chambers will contract COVID-19 in prison. And Mr. Chambers will lose his job, drop out of college, and surely have considerable difficulty getting back to work and into school again after a year serving time for a felony. The potential for what is relatively minor punishment here is far outweighed by the serious harm that prison will cause this young man.

Prison is also unnecessary for the sake of deterrence in this case. Mr. Chambers lost so much due to this case. He worked hard to be at UCF, succeed in ROTC, and set himself up for a

military career. That is all gone now. He is extremely remorseful and deathly afraid of further trouble in his life. He is devastated by losing his college and military careers but determined to earn his way down a different path. The Court need not impose a prison sentence to convince Mr. Chambers to never do this again. It need not impose a prison sentence to protect the public from Mr. Chambers.

### Conclusion

Mr. Chambers is a very smart and kind young man. Before these charges, he had a bright future that included graduating from the University of Central Florida and pursuing a career in the United States military. Those dreams and opportunities are over for him. But he can recover and have a great life. He is not a danger to the community. Prison will do nothing but punish him and make it even more difficult to recover from a felony conviction. The collateral consequences of his actions are enough punishment. And probation will ensure the safety of the community. Mr. Chambers deserves that second chance. For these reasons and those further discussed herein, a sentence of probation is appropriate in this case.

Respectfully submitted,

/s/ Mark P. Rankin
Mark P. Rankin
Florida Bar No. 0177970
The Law Office of Mark P. Rankin, P.A.
805 W. Azeele St.
Tampa, FL 33606
Telephone No. (727) 365-1751
Email: mark@rankinlawoffice.com
Attorney for Max Chambers

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of November 2020, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the AUSA of record and counsel for any co-defendants.

<u>/s/ Mark P. Rankin</u><br>
Mark P. Rankin